**Reversed and Remanded and Opinion Filed December 11, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-24-00614-CV

## DALLAS COUNTY, TEXAS, Appellant
## V.
## LARRY HENDERSON, Appellee

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-23-19078**

## MEMORANDUM OPINION

Before Justices Nowell, Miskel, and Breedlove
Opinion by Justice Breedlove

In this interlocutory appeal, the trial court denied appellant Dallas County,

Texas's plea to the jurisdiction regarding former employee Larry Henderson's

employment discrimination claims.[1] In six issues, the County contends the trial court

erred because appellee Henderson failed to exhaust his administrative remedies and

failed to plead a prima facie case for his claims. We conclude that (1) Henderson

failed to exhaust his administrative remedies and to plead a prima facie case on his

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (permitting interlocutory appeal from order
granting or denying plea to the jurisdiction by a governmental unit).

claims for discrimination based on his race, color, and national origin, and (2) the trial court's order requiring that Henderson replead his sex discrimination and retaliation claims was stayed by this appeal, and therefore, Henderson should be afforded the opportunity to comply with the trial court's order. Accordingly, we reverse the trial court's order in part, and remand in part.

## BACKGROUND

Henderson was employed by Dallas County. The record does not reveal Henderson's position, duties, or the date his employment commenced. He was suspended in November 2022, and terminated on December 20, 2022.

Henderson filed two separate charges of discrimination. First, on November 22, 2022, he filed a charge with the Equal Employment Opportunity Commission (EEOC), which was dual-filed with the Texas Workforce Commission Civil Rights Division (TWC) (First Charge). In the First Charge, Henderson alleged that he had been subjected to harassment and retaliation by his supervisor, specifying June 1, 2021, as the earliest date discrimination took place and November 21, 2022 as the latest date. For "the particulars," Henderson alleged:

> I. PERSONAL HARM: Since on or about June 17, 2021, I have been subjected to harassment and retaliation by Supervisor Shelly Cabera [sic]. The harassment includes but is not limited to being subjected to racial slurs such as house [n-word],[2] the scope of my job responsibilities has been altered limiting my ability to do my job, as I am no longer allowed to conduct community events. My promotion to community

---

[2] With the exception of this reference, the parties have substituted "n-word" or "n____" in their pleadings and briefs for racial epithets; we will do the same.

–2–

manager was cancelled and I was reclassified as a specialist. I was placed on administrative leave on or about October 31, 2022, after falsely being accused of being insubordinate.

II. RESPONDENT'S REASON FOR ADVERSE ACTION: I have not been provided a legitimate reason why I have been subjected to harassment and retaliation.

III. DISCRIMINATION STATEMENT: I believe that I was retaliated against in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended.

On November 30, 2022, the EEOC issued a Determination and Notice of Rights[3] on the First Charge.

On February 24, 2023, Henderson filed a second charge of discrimination with the EEOC, which was also dual-filed with the TWC (Second Charge). He checked boxes alleging discrimination based on race, color, sex, national origin, and retaliation, beginning on June 1, 2021, with the latest discrimination on December 20, 2022.[4]

The Second Charge is more detailed than the First Charge. After generally alleging that "[o]n numerous occasions during my employment, my direct

---

[3] The "Determination and Notice of Rights" issued by the EEOC and the "Letter of Notice of Right to File a Civil Action" issued by the TWC are commonly referred to as a claimant's "Right to Sue Notice," and that is how we will refer to the notices herein.

[4] Henderson did not check the available option for a "continuing action" on the charge of discrimination. We note that marking "continuing action" is not required to establish a claim of continuing violation as long as allegations or predicate facts are sufficient in the charge of discrimination to establish that a continuing violation theory is being alleged. *See Gomez v. Vertex Aerospace LLC*, No. 13-07-00082-CV, 2008 WL 4667545, at *6 n.8 (Tex. App.—Corpus Christi-Edinburg Oct. 23, 2008, no pet.) (mem. op.) (citing *Strouss v. Mich. Dep't of Corr.*, 75 F.Supp.2d 711, 723 (E.D. Mich. 1999)). Here, however, all of the allegations of serial violations occurred more than 180 days before Henderson filed the second charge of discrimination. Consequently, we have concluded that the continuing violation doctrine does not apply here, as we discuss below.

supervisor, Program Manager Shelley Cabrera would use the N-word or the term 'House n_____' to refer to myself and other African American employees at the workplace, and made false statements that I am the father of her child." As examples, he cited incidents on June 17, 2021, June 24, 2021, and July 8, 2021.

Henderson also complained of other discrete acts of discrimination. As "Personal Harm," he alleged:

- On August 8, 2021, he submitted a written complaint about Cabrera's use of the n-word to the County's HR Department. Although the HR Director, an Anglo-Caucasian, promised an investigation, "nothing was done, and Cabrera continued to use racially discriminatory language."

- "At the beginning of 2022," the County revoked a promised promotion.

- On May 3, 2022, Henderson complained to Dr. Philip Huang, who told him that he needed to "move on" because "it was just my word against leadership's."

- In October 2022, he filed a written internal complaint detailing Cabrera's "discriminatory behavior," including failure to hire two African Americans "because she wanted to hire a Hispanic." He sent the complaint "to HR, Dr. Huang, and the county administrator," but did not receive a substantive response.

- On November 14, 2022, he gave a recorded statement to "HR's Kelly Hall." "Hall then suspended me due to alleged insubordination," but promised an investigation. He submitted a rebuttal to information Hall provided.

- On November 22, 2022, he filed a charge of discrimination with the EEOC, and received a Right to Sue Notice on November 30, 2022.

- On December 20, 2022, Dr. Huang called and informed Henderson that his employment was terminated "because I had used the n-word at the workplace and that I had raised my voice to a supervisor." Henderson stated that "I had only used the n-word while recounting the things Cabrera said to myself and other African American team members." Although Dr.

Huang told Henderson that the District Attorney's office had completed its investigation, Dr. Huang failed to answer Henderson's question "why I never got a chance to speak with the DA myself."

Further under "Personal Harm," Henderson alleged that "Cabrera, a woman, has not been terminated or disciplined for her frequent use of the N-word, nor her discriminatory comments pertaining to African American men." He stated that "[t]he County's decision to allow a woman to use racial slurs and openly discriminate against African American men, yet terminate a man for merely repeating the same slur in the context of a report of discrimination, shows blatantly that the Company treats its employees disparately based on both race and gender."

As the County's "reason for adverse action," Henderson stated, "[t]he County claimed that I was being terminated for using the n-word, even though I had only used the word to recount Cabrera's use of the word for the purpose [of] reporting discrimination." Henderson made a concluding "discrimination statement" that "[t]he County wrongfully terminated me due to gender, my race, color, and national origin as well as in retaliation for reporting discrimination and my filing of a complaint with the EEOC in violation of Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act."

On September 28, 2023, the TWC issued a Right to Sue Notice on the Second Charge, informing Henderson that he had sixty days from receipt of the notice to file a civil action in state court.

On November 7, 2023, forty days later, Henderson filed this lawsuit against the County alleging he had been discriminated against based on his "race and/or color and/or national origin" and based on his sex, in violation of section 21.051 of the Texas Labor Code. He also pleaded that the County terminated him in retaliation for "filing a race/color/national origin/sex discrimination complaint."

The County filed a plea to the jurisdiction, attaching Henderson's two charges. The County alleged that Henderson's "claims under TCHRA are time-barred" because the events complained of should have "alerted the average layperson to protect his or her rights." Specifically, the County argued:

- The allegations of harassment and race or color discrimination are time-barred because Henderson waited more than 180 days from June 17, 2021 to file his First Charge;

- The same complaints were made in Henderson's Second Charge and are also time-barred, as were statements that Henderson alleged were made on June 17, 2021, June 24, 2021, and July 8, 2021;

- The allegation that a promotion was revoked "[a]t the beginning of 2022" is time-barred; and

- The allegations of sex discrimination in the Second Charge, based on events on August 8, 2021, and May 3, 2022, are time-barred.

The County also challenged the national origin, race, color, and gender claims for failure to plead supporting facts. The County argued:

- Other than checking the "national origin" box on the Second Charge, there is nothing to support a charge of discrimination on that basis in either charge, and Henderson did not identify his own national origin "or anyone else's national origin" in his petition;

- Henderson did not meet his burden to plead facts demonstrating subject matter jurisdiction for his race or color discrimination claims because he failed to plead that he was treated less favorably than similarly-situated individuals outside Henderson's protected class of African Americans and failed "to identify proper comparators"; and

- Henderson did not plead facts to demonstrate that he was treated less favorably than similarly-situated female employees.

The County also argued that Henderson failed to plead facts to support causation and his allegation that he was not promoted. The County argued:

- Henderson did not plead facts "that affirmatively demonstrate a causal connection between protected activity by Plaintiff and an adverse employment action by Defendant, namely, the termination of Plaintiff's employment"; and

- Henderson did not plead facts to support his "non-promotion claim" to demonstrate the position he sought, his qualifications for that position, or which employee outside of his protected class was promoted to the position he sought.

In response to the County's plea, Henderson argued that although certain instances of discrimination complained of in the Second Charge occurred more than 180 days prior to the date the charge was filed, the continuing violation doctrine applied to extend the 180-day time limitation. Henderson asserted that the County's conduct as set forth in his charge of discrimination and in his petition constituted an "ongoing course of conduct." Henderson also argued that he was not required to present a prima facie case to support his claims for discrimination and retaliation, but instead, was only required to put the County on fair notice of his claims.

The trial court heard the parties' arguments on May 1, 2024, and signed an order denying the County's plea. The court's order, however, also includes the

court's handwritten addition: "It is further ordered Plaintiff re-plead or amend its retaliation and gender claims no later than sixty (60) days of this court's order." The County filed this appeal before the sixty-day period elapsed.

## ISSUES

In six issues, the County complains the trial court erred in denying its plea to the jurisdiction because Henderson failed to plead a prima facie case on his claims for discrimination on the basis of race (Issue 1), color (Issue 2), national origin (Issue 3), sex (Issue 4), and for retaliation (Issue 5) and a hostile work environment (Issue 6). In Issues 2, 3, and 6, the County also alleges that Henderson failed to exhaust his administrative remedies as to his color, national origin, and hostile work environment claims.

## STANDARD OF REVIEW

Whether a court has subject-matter jurisdiction is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We review a trial court's ruling on questions of law de novo. *Id.* at 228.

Governmental units are immune from suit unless the state consents. *Id.* at 224. The TCHRA waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). Immunity from suit may be asserted through a plea to the jurisdiction and may challenge the pleadings, the existence of jurisdictional facts, or both. *Id.* at 770–71. When a jurisdictional plea challenges the pleadings, we

–8–

determine if the plaintiff has alleged facts affirmatively demonstrating subject matter jurisdiction. *Id.* If, however, the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim. *Id.* Here, however, the County's jurisdictional plea did not challenge the existence of jurisdictional facts with supporting evidence, nor did Henderson offer any evidence in response to the County's plea. Our review is therefore limited to determining whether Henderson has alleged facts affirmatively demonstrating subject matter jurisdiction. *See id.* at 770.

**APPLICABLE LAW**

**1. Texas Commission on Human Rights Act**

The TCHRA prohibits an employer from discriminating against an individual because of race, color, disability, religion, sex, national origin, or age. *Hoffman-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). The TCHRA "is a comprehensive fair employment practices act and remedial scheme, modeled after Title VII of the federal Civil Rights Act of 1964 (Title VII) that provides the framework for employment discrimination claims in Texas." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 502–03 (Tex. 2012) (footnote omitted). The TCHRA "was enacted to address the specific evil of discrimination and retaliation in the workplace," and was designed to "conform with parallel federal employment discrimination laws." *City of Waco v. Lopez*, 259 S.W.3d 147, 153–54 (Tex. 2008).

–9–

While we consider the TCHRA's plain language and state precedent in interpreting the statute, we also look to federal law for interpretive guidance about whether the TCHRA satisfies its legislative mandates executing the policies of Title VII and subsequent amendments. *Crutcher v. Dallas Indep. Sch. Dist.*, 410 S.W.3d 487, 492 (Tex. App.—Dallas 2013, no pet.) (citing TEX. LABOR CODE § 21.001(1)); *Filardo v. Baylor Scott & White Health*, No. 05-21-01066-CV, 2023 WL 5317870, at *6 (Tex. App.—Dallas Aug. 18, 2023, no pet.) (mem. op.).

### 2. Exhaustion of administrative remedies

A person claiming a violation of TCHRA must first exhaust his administrative remedies before filing a civil action. *See, e.g., Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 552 (5th Cir. 2020) (TCHRA "requires those claiming employment discrimination to file an administrative complaint with the TWC before filing an action in court") (citing TEX. LAB. CODE ANN. §§ 21.201(a), 21.252(a), and 21.254, and *Gorman v. Verizon Wireless Tex. L.L.C.*, 753 F.3d 165, 169 (5th Cir. 2014)). This requires a plaintiff (1) to file a charge of discrimination within 180 days of the alleged unlawful employment practice, and (2) to file suit within 60 days of receiving a Right to Sue Notice. TEX. LAB. CODE ANN. § 21.202 (statute of limitations); *id.* § 21.254 ("Within 60 days after the date a notice of the right to file a civil action is received, the complainant may bring a civil action against the respondent."); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam) ("Texas law requires that a complaint of unlawful employment

practices be filed with the Equal Employment Opportunity Commission or the Texas Commission on Human Rights within 180 days after the alleged unlawful employment practice occurred. This time limit is mandatory and jurisdictional." [citations omitted]).

The purposes underlying the administrative-complaint requirement include giving the charged party notice of the claim, narrowing the issues for speedier and more effective adjudication and decision, and giving the administrative agency and the employer an opportunity to resolve the dispute. *See Pacheco v. Mineta,* 448 F.3d 783, 789 (5th Cir. 2006); *Manning v. Chevron Chem. Co., LLC,* 332 F.3d 874, 878–79 (5th Cir. 2003); *Lopez v. Tex. State Univ.*, 368 S.W.3d 695, 701 (Tex. App.—Austin 2012, pet. denied). The exhaustion of administrative remedies is a jurisdictional prerequisite to filing suit for unlawful employment practices. *Specialty Retailers, Inc.*, 933 S.W.2d at 492.

### DISCUSSION

## 1. Timeliness of Henderson's suit

The EEOC issued a Right to Sue Notice for the First Charge on November 30, 2022, and Henderson had sixty days from that date to file a civil action in state court on the claims covered by that charge. TEX. LAB. CODE ANN. § 21.254. Henderson did not do so. Therefore, all claims raised in the First Charge—specifically, that Henderson was subjected to a discriminatory workplace from June 1, 2021 until November 21, 2022—are time-barred. *See id.*

–11–

The TWC issued a Right to Sue Notice for the Second Charge on September 28, 2023. Henderson filed this lawsuit less than sixty days later on November 7, 2023, within the sixty-day deadline set forth in § 21.254.

Henderson is also required to show, however, that the Second Charge contained allegations of unlawful workplace conduct that occurred within 180 days of February 24, 2023, the date he filed the Second Charge. TEX. LAB. CODE ANN. § 21.202(a) ("a complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred"). Applying this requirement, any complaint about conduct occurring before August 28, 2022, is time-barred. TEX. LAB. CODE ANN. § 21.202; *Univ. of Tex. at Dallas v. Addante*, No. 05-20-00376-CV, 2021 WL 4772931, at *6 (Tex. App.—Dallas Sept. 8, 2021, pet. denied) (mem. op.) ("A plaintiff may not recover for discrete acts of discrimination or retaliation that occur outside the limitations period." [internal quotation omitted]). The Second Charge includes several time-barred complaints:

- "[O]n June 17, 2021, after an outdoor team canvasing event I remarked to Cabrera about the heat. Cabrera responded that myself and my team all 'just wanna be house n__s.'"

- "On June 24, 2021, Cabrera made another statement that she 'didn't want to fool with them n__s' after leaving a community planning event."

- "On July 8, 2021, Cabrera told my co-worker Monica Garrett that she [Cabrera] was pregnant and that I was the father, playing on a racist stereotype of unwed African American fathers."

- "After repeated incidents of the same nature, and hearing of similar use of the n-word by Cabrera directed to other African American co-workers, I

–12–

submitted a written statement complaining of this behavior to the County's HR department on August 8, 2021."

- "Though I was informed by HR Director, Robert Wilson, Anglo-Caucasian, that an investigation would be conducted, nothing was done, and Cabrera continued to use racially discriminatory language. At the beginning of 2022, the County revoked a promotion that I had been previously promised."

- "On May 3, 2022, while in Dr. Philip Huang's office making copies, Dr. Huang called me into his private office to talk. As I was telling Dr. Huang how Cabrera's behavior and management's lack of action was negatively affecting me, Dr. Huang, who is Asian American, told me that I needed to 'move on' because it was just my word against leadership's."

Henderson appears to rely on these time-barred complaints, however, in support of his contention that he suffered not only discrete acts of discrimination, but also continuing violations of TCHRA. The "continuing violation doctrine" is an exception to the application of the 180-day limitations period in § 21.202(a). "The doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Univ. of Tex. Sw. Med. Ctr. v. Saunders*, No. 05-15-01543-CV, 2016 WL 3854231, at *5 (Tex. App.—Dallas July 13, 2016, pet. denied) (mem. op.). As we explained in *Saunders*, the doctrine "relieves a plaintiff from establishing that all of the alleged discriminatory conduct occurred within the actionable period if the plaintiff can show that, in addition to acts that otherwise would be time-barred, the conduct continued into the actionable period." *Id.* "Under the continuing violation theory, a plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to

–13–

the cause of action." *Id.* "A continuing violation is a persisting and continuing system of discriminatory practices in promotion or transfer that produces effects that may not manifest themselves as individually discriminatory except in cumulation over a period of time." *Id.* (internal quotation omitted). "Accordingly, a claim of hostile work environment[5] is a continuing violation, while termination, failure to promote, denial of transfer, or refusal to hire are discrete acts." *Id.* (internal quotations omitted). "The core idea of the continuing violations theory is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a claim are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights." *Id.* (internal quotation omitted).

We conclude the continuing violation doctrine does not apply to revive Henderson's complaints about discrimination occurring before August 28, 2022, including Cabrera's use of offensive language and the revocation of Henderson's promotion. All of the dates alleged occurred outside of the 180-day period, notably including the date that Henderson raised the complaint, in writing, to the County's

---

[5] We note that Henderson did not allege a hostile work environment claim in either of his charges or in his petition. It was only in response to the County's plea to the jurisdiction that Henderson argued, "In addition, the repeated use of the N-word by Plaintiff's supervisor when tied to Defendant's taking away Plaintiff's promotion, his suspension, and termination for using the N-word when describing his supervisor's words are sufficient to establish a hostile work environment claim." Lack of pleading notwithstanding, the County specifically challenged the trial court's denial of its plea to the jurisdiction on this claim in its sixth issue on appeal.

human resources department and the date he complained to Dr. Huang. Further, Henderson contends the County responded to his complaints about Cabrera by revoking a promised promotion. This revocation, too, occurred more than 180 days before Henderson filed the Second Charge, and in any event, is a "discrete occurrence" rather than "the cumulative effect of the discriminatory practice." *See id.* We conclude that "facts supportive of" these claims were or should have been apparent to Henderson more than 180 days before he filed the Second Charge, and are not actionable as continuing violations. *See id.*

We conclude Henderson's claims of discrimination occurring more than 180 days before he filed the Second Charge are time-barred. TEX. LAB. CODE ANN. § 21.202; *Addante*, 2021 WL 4772931, at *6. We sustain the portions of the County's first, second, third, and sixth issues challenging the timeliness of Henderson's race, color, national origin, and hostile work environment claims based on alleged violations occurring more than 180 days before February 24, 2023.

## 2. Race, color, and national origin discrimination claims

In issues one, two, three, and six, the County asserts that Henderson's claims of race, color, national origin discrimination, and hostile work environment discrimination should have been dismissed because: (1) they are time barred, and (2) Henderson failed to plead a prima facie case of discrimination. We have already concluded that all allegations of discrimination occurring prior to August 28, 2022, are time-barred, and that the continuing violation doctrine does not apply to support

a hostile work environment claim. Therefore, our analysis is limited to whether Henderson pled a prima facie case that he suffered acts of race, color, and national origin discrimination after August 28, 2022.

### A. Race discrimination claim

The parties initially disagree about the showing Henderson was required to make in support of his race discrimination claim in response to the County's plea to the jurisdiction. Citing *Holloway v. Dallas County Hospital District*, No. 05-20-01114-CV, 2022 WL 17883799, at *16 (Tex. App.—Dallas Dec. 23, 2022, no pet.) (mem. op.), the County argues that to establish a prima facie case of race discrimination, Henderson was required to show (1) he was a member of a protected class, (2) he was qualified for his position, (3) he was subjected to an adverse employment action, and (4) he was treated less favorably than similarly situated individuals outside of his protected class.

Henderson responds that he was required only to give "fair notice" of his claims, not plead a prima facie case of discrimination.[6] We conclude the County has correctly described the required showing. As this Court has explained, "[i]t is the

---

[6] Henderson cites *United Independent School District v. Mayers*, 665 S.W.3d 775, 783–84 (Tex. App.—San Antonio 2023, no pet.), in support of his argument that only "fair notice" pleading was required. The discussion in *Mayers* regarding "fair notice" pleading, however, was in response to the defendant's complaint that the plaintiff "did not adequately plead a cause of action" for sex discrimination under Title VII of the Civil Rights Act of 1964. *See id.* The defendant argued that the petition contained only a "superficial reference" to Title VII and contained "so many errors that it is not possible for opposing counsel to identify" whether the superficial reference "was nothing more than the product of mistake." *Id.* at 783. The court rejected this argument, concluding that the plaintiff's petition gave fair notice of her sex discrimination claim. *See id.* at 783–84. Here, in contrast, the issue is whether Henderson has stated a claim for conduct that violates TCHRA sufficient to waive the County's immunity. *See Clark*, 544 S.W.3d at 770.

plaintiff's burden to plead facts that affirmatively establish the trial court's subject matter jurisdiction." *Kingman Holdings, LLC v. Mortg. Elec. Registration Sys., Inc.*, No. 05-15-01353-CV, 2016 WL 8115937, at *4 (Tex. App.—Dallas Oct. 27, 2016, no pet.) (mem. op.). "The TCHRA waives immunity from suit only for statutory violations, which means the trial court lacks subject-matter jurisdiction over the dispute absent some evidence [the defendant] violated the TCHRA." *Clark*, 544 S.W.3d at 763. The plaintiff must "state[ ] a claim for conduct that actually violates the statute." *Id.* at 770.

"When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case." *Kingman Holdings, LLC*, 2016 WL 8115937, at *4 (citing *Miranda*, 133 S.W.3d at 226). Although the *McDonnell Douglas* burden-shifting analysis[7] did not come into play in the trial court because neither party offered any evidence in support of or in opposition to the County's plea to the jurisdiction, Henderson was required to plead "a claim for conduct that actually violates" TCHRA in order to overcome the plea. *Clark*, 544 S.W.3d at 770.

In his petition, Henderson alleged the following acts occurred after August 28, 2022:

- "In October 2022, Plaintiff filed another internal racial discrimination complaint after his co-worker Eric Hafeez came into his office and told him

---

[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973) (setting forth the procedure for assessing a disparate-treatment claim when direct evidence of discrimination is lacking).

that Cabrera said she had no intention of hiring Keith Williams or Michael McDonald, both of whom are African American, because she wanted to hire a Hispanic. In the complaint, Plaintiff detailed all of Cabrera's discriminatory behavior and sent the complaint to HR, Dr. Huang, and the Dallas County administrator. Dr. Huang replied to Plaintiff's email and said he wanted to talk about his complaint, and Plaintiff confirmed that he was available on October 19, 2022. Plaintiff never received a response from Dr. Huang."

- "On November 14, 2022, Plaintiff gave his statement to HR's Kelly Hall, and Hall recorded the statement. Hall then suspended Plaintiff due to alleged insubordination but said Dallas County would investigate the matter and she would have her conclusion by the end of the week. Later that night, Hall emailed Plaintiff a list of questions and showed him a statement from Dr. Huang, and Plaintiff submitted his rebuttal a few days later."

- "On November 22, 2022, Plaintiff filed a charge of Discrimination with the EEOC and Texas Workforce Commission–Civil Rights Division detailing the discrimination he had experienced."

- "On December 20, 2022, Dr. Huang called Plaintiff to inform him that his employment was being terminated. Dr. Huang stated the reason was because he had used the n-word at the workplace and that he had raised his voice to a supervisor. Plaintiff had only used the n-word while recounting the things Cabrera said to Plaintiff and other African American team members. Dr. Huang stated that the District Attorney's office had completed their investigation, but when Plaintiff asked Dr. Huang why he never got a chance to speak with the DA himself, Dr. Huang went quiet and did not answer his question."

Henderson pleaded that the County discriminated against him "because of his race and/or color and/or national origin" and his sex, and retaliated against him "for filing a race/color/national origin/sex discrimination complaint to HR" by terminating him. He relied on Cabrera as a comparator:

> Upon information and belief, Cabrera, a woman, has not been terminated for her frequent use of the N-word, nor her discriminatory comments pertaining to African American men. Dallas County's decision to allow a woman to use racial slur and openly discriminate against African American men, yet terminate a man for merely

–18–

repeating the same slur in the context of a report of discrimination, shows blatantly that Dallas County treats its employees disparately based on both race and gender.

Henderson pleaded that he was suspended and then terminated in violation of Section 21.051 of the Texas Labor Code.[8] That section provides:

An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LABOR CODE ANN. § 21.051.

The County agrees that Henderson was a member of a protected class based on his race, but argues that Henderson failed to allege that he was treated less favorably than similarly-situated individuals who were not African American. "To make a prima facie case of discrimination, [a plaintiff] must show that he was treated less favorably than similarly situated individuals who were outside his protected class." *Matej v. Tex. Parks & Wildlife Dep't*, No. 03-23-00420-CV, 2024 WL

---

[8] Henderson also relies on labor code § 21.055 in support of his retaliation claim. *See* TEX. LAB. CODE ANN. § 21.055 (providing that an employer commits an unlawful employment practice if it retaliates or discriminates against a person who has opposed a discriminatory practice, made or filed a charge or complaint, or participated in an investigation, proceeding, or hearing). We do not discuss § 21.055 here given our remand of Henderson's retaliation claim to the trial court.

–19–

3995390, at *4 (Tex. App.—Austin Aug. 30, 2024, no pet.) (mem. op.). "This requires [the plaintiff] to proffer a comparator—a [County] employee whose employment was not terminated under nearly identical circumstances." *Id.* (internal quotation omitted). Specifically, Henderson "must show that he and his comparator (1) held the same job or responsibilities; (2) shared the same supervisor or had their employment status determined by the same person; (3) have essentially comparable violation histories; and (4) have engaged in nearly identical conduct to the conduct that resulted in the termination of [his] employment." *Id.* (internal quotations omitted); *see also Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) ("Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." [footnotes omitted]).

Henderson cites Cabrera as a comparator in his petition, pleading that "Cabrera, a woman, has not been terminated for her frequent use of the N-word, nor her discriminatory comments pertaining to African American men." But Henderson also expressly pleaded that Cabrera was his direct supervisor. The supreme court has explained that "the situations and conduct of the employees in question must be nearly identical." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 584 (Tex. 2017) (internal quotation and citation omitted). "Employees who hold different jobs are not similarly situated and, ordinarily, it will not be the case that a plaintiff is similarly situated to another employee when the plaintiff is subordinate to that employee." *Id.*

–20–

(internal quotation and citation omitted). "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Id.* (internal quotation and citation omitted). Henderson did not plead any facts to show that even though he was subordinate to Cabrera, "their circumstances [were] comparable in all material respects." *Id.* Further, Henderson did not allege Cabrera's race, and therefore did not allege that she was outside of his protected class as to race. *See Ysleta Indep. Sch. Dist.*, 177 S.W.3d at 917 (plaintiffs must show they were "treated less favorably than similarly situated members of the opposing class"). Because Henderson did not show that he was treated less favorably than similarly situated individuals who were outside his protected class, *see Matej*, 2024 WL 3995390, at *4, we conclude that Henderson did not allege facts affirmatively demonstrating the trial court's subject matter jurisdiction over his race discrimination claim. *See Clark*, 544 S.W.3d at 770–71.

We conclude that the trial court erred by denying the County's plea to the jurisdiction as to Henderson's race discrimination claim. We sustain the County's first issue.

### B. Color and national origin discrimination claims

Henderson makes no argument to distinguish his color and national origin discrimination claims from his race claim. *See Donnelly v. Academic P'ships, LLC*, No. 3:20-CV-01106-X, 2021 WL 462052, at *3 (N.D. Tex. Feb. 9, 2021) (mem. op. & order) ("Color and race discrimination are related but distinct forms of

discrimination."); *Hernandez v. City of Corpus Christi*, 820 F. Supp. 2d 781, 796 (S.D. Tex. 2011) (Courts "will treat a national origin discrimination claim as a racial discrimination claim, or vice versa, when the national origin and race may be correlated."). Because Henderson has not alleged facts to support a claim of discrimination based on color or national origin, the trial court should have sustained the County's plea to the jurisdiction on these claims. We sustain the County's second and third issues.

**3. Retaliation and sex-based discrimination claims**

We remand to the trial court Henderson's retaliation and sex-based discrimination claims that are challenged in the County's fourth and fifth issues on appeal. Although the trial court ordered Henderson to "re-plead and/or amend" those claims in 60 days, the County filed its appeal before that time period elapsed and before Henderson had complied with the order. Trial court proceedings were then stayed. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7), (c). Henderson's right to replead, however, is limited by our determination that all events occurring prior to August 28, 2022, are time barred.

### CONCLUSION

We remand to the trial court Henderson's retaliation and sex-based discrimination claims. We reverse the trial court's denial of the County's plea to the

jurisdiction on Henderson's claims that he was discriminated against based on his race, color, or national origin.

240614f.p05

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

DALLAS COUNTY, TEXAS,
Appellant

No. 05-24-00614-CV          V.

LARRY HENDERSON, Appellee

On Appeal from the 95th District
Court, Dallas County, Texas
Trial Court Cause No. DC-23-19078.
Opinion delivered by Justice
Breedlove. Justices Nowell and
Miskel participating.

In accordance with this Court's opinion of this date, the trial court's May 1, 2024 "Order Denying Dallas County, Texas' Plea to the Jurisdiction" is **REVERSED** in part and this cause is **REMANDED** in part to the trial court for further proceedings consistent with the opinion.

It is **ORDERED** that appellant Dallas County, Texas recover its costs of this appeal from appellee Larry Henderson.

Judgment entered this 11th day of December, 2024.